1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   LEE BOWMAN,                              No. 2:18-cv-00472-TLN-KJN

12                   Plaintiff,

13         v.                                 **ORDER**

14   ADAMS & ASSOCIATES, INC., et al.,

15                   Defendants.

16

17          This matter is before the Court on Defendant Adams & Associates, Inc.'s ("Defendant")

18   Motion to Dismiss.  (ECF No. 14.)  Plaintiff Lee Bowman ("Plaintiff") opposed the motion (ECF

19   No. 15), and Defendant replied (ECF No. 16).  For the reasons set forth below, the Court

20   GRANTS in part and DENIES in part Defendant's motion.

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1

## I.   FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff is an African American woman.  (ECF No. 13 at 10.)  On February 4, 2002, Defendant's predecessor hired Plaintiff at the Sacramento Job Corps ("Job Corps").  (*Id.* at 3.)  Job Corps is a federally-sponsored training program, which provides economically disadvantaged young people with technical and academic training at no cost.  (*Id.*)  In March 2014, Defendant became the new managing corporation for Job Corps and hired Plaintiff as a Center Shift Manager.  (*Id.*)  Plaintiff alleges that during the initial months of Defendant's operation of Job Corps, its management targeted older, minority, union employees for excessive discipline and termination.  (*Id.*)  Plaintiff also alleges Kelly McGillis, the Center's director, specifically asked other employees if Plaintiff was "union friendly."  (*Id.*)

In January 2015, Plaintiff alleges she testified before the National Labor Relations Board ("NLRB") in an action brought by several union members.  (*Id.*)  Prior to testifying, Plaintiff alleges Defendant's attorneys met with her and attempted to influence her testimony by telling her to deny any improper or illegal actions against union members.  (*Id.* at 3–4.)  Defendant's personnel allegedly implied Plaintiff would be subject to retribution in her continued employment if she refused to change her testimony.  (*Id.* at 4.)  Despite Defendant's alleged efforts to dissuade her, Plaintiff testified before the NLRB about Defendant's anti-union conduct and unfair treatment of employees based on protected classifications.  (*Id.*)

Plaintiff alleges Defendant's management treated her with immediate hostility following her testimony.  (*Id.*)  On March 9, 2015, Plaintiff received her annual evaluation and was informed she was failing in her position.  (*Id.*)  When Plaintiff asked about the specifics and documentation, management failed to provide details of specific incidents or warnings from the previous year.  (*Id.*)  Plaintiff informed management she was concerned her performance evaluations were being altered with false allegations in retaliation for her testimony.  (*Id.*)  Subsequently, Plaintiff filed harassment and retaliation complaints against Defendant for her evaluation and asserted she was being targeted for testifying against Defendant.  (*Id.*)

---

[1]   The following of recitation of facts is taken, sometimes verbatim, from the First Amended Complaint ("FAC").  (ECF No. 13.)

At all times relevant to this matter, Plaintiff alleges she suffered from diabetes.  (*Id.* at 7.)  On or about March 28, 2015, Plaintiff had a health emergency related to her diabetes and exposure to stress and poor health conditions at the Defendant's property, forcing her to take a medical leave of absence.  (*Id.* at 4, 7.)  In June 2015, Plaintiff's physician approved her return to work with the accommodation of the use of a scooter, but Plaintiff alleges Defendant denied her return to work.  (*Id.* at 4.)  On June 22, 2015, Plaintiff provided a note from her physician to Defendant's management team stating she could conduct her job duties so long as she had a scooter to allow mobility.  (*Id.*)  Penny Steiner, a member of Defendant's management team, called Plaintiff and informed her she could not return to work or come to the campus because she was seeking an accommodation.  (*Id.*)  Plaintiff continued to provide additional paperwork as requested by Defendant's management team and was repeatedly denied permission to return to work with accommodations.  (*Id.* at 5–6.)  Plaintiff alleges she was unable to return to her position or have an open, interactive process about her accommodations until August 2015.  (*Id* at 6.)

Plaintiff returned to work on August 22, 2015.  (*Id.* at 6, 17.)  Plaintiff alleges she filed a workers' compensation claim and Equal Employment Opportunity ("EEO") claim upon her return to work and subsequently faced greater hostility from management.  (*Id.* at 6.)  When Plaintiff attempted to speak to management about the hostile work environment and management's failure to accommodate her, Defendant's personnel denied any failure to accommodate and reiterated Plaintiff's failing job performance.  (*Id.*)  Plaintiff alleges she spoke to management and repeatedly asserted she believed she was being targeted with false performance evaluations as a pretext for retaliatory and discriminatory practices.  (*Id.*)

Plaintiff alleges she reported Defendant was using improper procedures for handling employee discipline, including the use of unverified claims that employees were sleeping as an excuse for terminations without due process.  (*Id.*)  Plaintiff alleges she is aware of other similarly situated employees who were not African American and not disabled, but raised similar concerns as Plaintiff and were not threatened with discipline or termination.  (*Id.* at 9–10.)  On or about November 16, 2015, Plaintiff attended a meeting with Defendant's management staff regarding

1  an employee who was sleeping on the job.  (*Id.* at 6.)  At the meeting, Plaintiff alleges

2  Defendant's management team accused Plaintiff herself of failing to follow procedure, which

3  Plaintiff denied.  (*Id.*)

4  　　　Plaintiff alleges Defendant did not investigate her complaints regarding the failure to

5  provide her with accommodations or the false disciplinary charges and termination.  (*Id.* at 7.)

6  Defendant terminated Plaintiff's employment on December 5, 2015, and Plaintiff alleges her

7  termination was in retaliation for her testimony before the NLRB and based on her race, health

8  condition, and support of other employees.  (*Id.*)

9  　　　Plaintiff asserts nine causes of action against Defendant in her FAC: (1) disability

10  discrimination; (2) race discrimination; (3) wrongful termination against public policy; (4)

11  retaliation; (5) harassment; (6) failure to prevent discrimination; (7) failure to accommodate; (8)

12  failure to engage in the interactive process; and (9) intentional infliction of emotional distress

13  ("IIED").  (ECF No. 13 at 1.)  Defendant filed the instant motion to dismiss on May 20, 2020.

14  (ECF No. 14.)

15  　　　**II.**　　　**STANDARD OF LAW**

16  　　　A motion to dismiss for failure to state a claim upon which relief can be granted under

17  Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint.

18  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires a pleading contain "a

19  short and plain statement of the claim showing that the pleader is entitled to relief."  *See Ashcroft*

20  *v. Iqbal*, 556 U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the complaint

21  must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests."

22  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  "This

23  simplified notice pleading standard relies on liberal discovery rules and summary judgment

24  motions to define disputed facts and issues and to dispose of unmeritorious claims."  *Swierkiewicz*

25  *v. Sorema N. A.*, 534 U.S. 506, 512 (2002).

26  　　　On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

27  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give plaintiff the benefit of every

28  reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

1   *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

2   "'specific facts beyond those necessary to state his claim and the grounds showing entitlement to

3   relief." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads

4   factual content that allows the court to draw the reasonable inference that the defendant is liable

5   for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

6        Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

7   factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir.

8   1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an

9   unadorned, the defendant–unlawfully–harmed–me accusation." *Iqbal*, 556 U.S. at 678.  A

10  pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

11  elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

12  ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

13  statements, do not suffice.").  Moreover, it is inappropriate to assume the plaintiff "can prove

14  facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not

15  been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459

16  U.S. 519, 526 (1983).

17       Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

18  facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting

19  *Twombly*, 550 U.S. at 570).  Only where a plaintiff has failed to "nudge[] [his or her] claims . . .

20  across the line from conceivable to plausible," is the complaint properly dismissed. *Id.* at 680.

21  While the plausibility requirement is not akin to a probability requirement, it demands more than

22  "a sheer possibility that a defendant has acted unlawfully." *Id*. at 678.  This plausibility inquiry is

23  "a context–specific task that requires the reviewing court to draw on its judicial experience and

24  common sense." *Id.* at 679.  If a complaint fails to state a plausible claim, "[a] district court

25  should grant leave to amend even if no request to amend the pleading was made, unless it

26  determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez*

27  *v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d

28  484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding

1   no abuse of discretion in denying leave to amend when amendment would be futile.)  Although a

2   district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the

3   court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously

4   amended its complaint."  *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520

5   (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

6       **III.   ANALYSIS**

7       Defendant moves to dismiss each of Plaintiff's claims, arguing they do not allege "the

8   requisite level of factual detail" to comply with the requirements of Rule 8 as well as *Twombly*

9   and *Iqbal*.  (*See* ECF No. 14.)  The Court will discuss each claim in turn.

10          A.   Claim One: Disability Discrimination

11      In order to bring a prima facie claim for disability discrimination under FEHA, Plaintiff

12  must show she: "(1) suffered from a disability, or was regarded as suffering from a disability; (2)

13  could perform the essential duties of the job with or without reasonable accommodations[;] and

14  (3) was subjected to an adverse employment action because of the disability or perceived

15  disability."  *Alsup v. U.S. Bancorp*, No. 2:14-cv-01515-KJM-DAD, 2015 WL 6163453, at *4

16  (E.D. Cal. Oct. 2015) (citing *Wills v. Superior Ct.*, 195 Cal. App. 4th 143, 159–60 (2011)).

17              *i.     Whether Plaintiff Suffers from a Disability*

18      FEHA defines "physical disability" as a condition that both affects one or more body

19  systems and limits a major life activity, including working.  Cal. Gov't Code § 12926(m)(1).

20  "Essential duties" are defined as "the fundamental job duties of the employment position of the

21  individual with a disability holds or desires."  Cal. Gov't Code § 12926(f)(1).  Determining the

22  essential functions of a position requires a highly fact-intensive inquiry.  *Lui v. City & Cnty. of*

23  *San Francisco*, 211 Cal. App. 4th 962, 971 (2012).

24      With respect to the first prong, Plaintiff alleges she suffered from diabetes "[a]t all times

25  relevant to this matter," and that she fell ill in March 2015 because of her diabetes, stress, and

26  "poor health conditions" at Defendant's property.  (ECF No. 13 at 7.)  Plaintiff specifically

27  alleges she is a member of a protected class because she has a physical disability as defined by

28  California Government Code § 12926(m), which "limited her life activities, including her ability

6

to work[,] unless [she was] provided reasonable accommodation.  (*Id.* at 8.)  The Court finds

these allegations plausibly suggest Plaintiff had a physical disability.

### ii. *Whether Plaintiff Can Perform Her Job With or Without Accommodations*

With respect to the second prong, although Plaintiff does not set forth what the essential

duties of her position were, she alleges she could perform the essential duties of her job with

accommodations of an electric scooter to assist her in her rounds.  (*Id.* at 7–8.)  Specifically, her

physician found her capable of returning to work but noted she would require the use of a scooter.

(*Id.* at 8.)  Plaintiff alleges her disability and need for accommodations were communicated to

Defendant by Plaintiff and her physician through verbal and written communications.  (*Id.*)  In the

absence of contrary argument, the Court can infer from these allegations that Plaintiff could

perform the essential duties of her position with reasonable accommodation.  *See Achal v. Gate

Gourmet, Inc.*, 114 F. Supp. 3d 781, 798 (N.D. Cal. 2015) (finding where plaintiff had alleged

that he performed "in good standing" and that there was "never any question" as to his job

performance, "[t]he [c]ourt can infer . . . that [plaintiff] was capable of performing the essential

duties of his position with reasonable accommodation").

### iii. *Whether Plaintiff Was Subjected to an Adverse Employment Action*

The standard for determining whether an employee has been subjected to "adverse

employment action" is whether employment action materially affected "terms and conditions of

employment," with that term being liberally construed in order to afford employees "appropriate

and generous protection against employment discrimination."  *Yanowitz v. L'Oreal USA, Inc.*, 36

Cal. 4th 1028, 1054 (2005) (citing Cal. Gov't Code §§ 12940(a),(h)).  Dissemination of a

negative employment reference, issuance of a negative performance evaluation, and termination

all constitute adverse employment actions.  *Id.* at 1060–61; *see also Brooks v. City of San Mateo*,

229 F.3d 917, 928 (9th Cir. 2000).  To satisfy the third element of a § 12940(a) disability

discrimination claim, the plaintiff's disability must have been a "substantial motivating factor" in

the particular employment decision.  *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 232 (2013).

Plaintiff alleges she received a negative performance evaluation and was terminated from her position. (ECF No. 13 at 4, 7.) The crux of the matter is whether Plaintiff adequately alleges that Plaintiff's disability was a "substantial motivating factor" in the adverse employment actions alleged. Defendant argues Plaintiff failed to remedy the deficiencies in the Complaint, and the FAC lacks sufficient factual allegations which would suggest Defendant subjected Plaintiff to an adverse employment action because of her medical condition or disability. (ECF No. 14 at 9–10.) Defendant contends Plaintiff's allegations that other similarly situated employees outside of her protected class were treated more favorably is merely conclusory. (*Id.* at 10–11.) Defendant further argues Plaintiff's allegations are not sufficiently detailed "to show that these individuals actually exist and that they have actually been treated more favorably than [her]." (*Id.* at 11.) In opposition, Plaintiff argues she sufficiently alleges that other employees who shared her equivalent position and were not disabled did not face the same threats of discipline and termination, and this is sufficient to establish Defendant acted with a discriminatory motive. (ECF No. 15 at 6–7.)

The facts alleged in Plaintiff's FAC, taken together, give rise to a plausible inference that Plaintiff's termination was related to her disability and need for accommodation. (*See* ECF No. 13 at 4 –9.) Plaintiff specifically identifies at least two similarly situated employees, who shared the same job title as Plaintiff, who were not disabled but were treated more favorably than Plaintiff. (*Id.* at 12); *see also Achal*, 114 F. Supp. 3d at 800 (a plaintiff can demonstrate discriminatory motive by showing "other similarly situated employees outside of the protected class were treated more favorably"). Plaintiff also alleges she was replaced by an individual who was not similarly disabled. (ECF No. 13 at 7.) Finally, Plaintiff identifies specific communications and interactions in which Defendant delayed the interactive process and repeatedly denied Plaintiff's return to work because of her request for accommodations. (*Id.* at 4–6.) The Court finds Plaintiff sufficiently alleges she was subject to an "adverse employment action." *See Yanowitz*, 36 Cal. 4th at 1060–61; *Brooks*, 229 F.3d at 928–29.

///

///

The Court finds Plaintiff sufficiently alleges facts to state a claim for disability discrimination.  Accordingly, Defendant's motion to dismiss Plaintiff's claim for disability discrimination in violation of California Government Code § 12940(a) is DENIED.

### B.    Claim Two: Racial Discrimination

Defendant argues the FAC's conclusory allegations are insufficient to give rise to an inference that Defendant acted with a discriminatory motive.  (ECF No. 14 at 11–12.)  In opposition, Plaintiff argues she sufficiently alleges facts to state a plausible claim that her disparate treatment was based on her race.  (ECF No. 15 at 6–7.)

To state a claim for racial discrimination, Plaintiff must allege: (1) she was a member of a protected class; (2) she was performing competently in the position she held; (3) she suffered an adverse employment action; and (4) other similarly situated employees outside of the protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.  *Achal*, 114 F. Supp. at 800; *see also Ayala v. Frito Lay*, 263 F.Supp.3d 891, 905 (E.D. Cal. 2017).  A plaintiff can demonstrate the employer acted with a discriminatory motive by direct or circumstantial evidence.  *Achal*, 114 F. Supp. 3d at 801 (citing *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221–22 (9th Cir. 1998)).

Here, the FAC alleges a plausible prima facie case of racial discrimination. With respect to the first element, Plaintiff alleges she is an African American and therefore part of a protected class.  With respect to the second and third elements, as discussed under the disability discrimination claim, the Court can infer from Plaintiff's pleadings that she could perform the essential duties of her position with reasonable accommodation and Plaintiff suffered an adverse employment action.

At issue here is whether Plaintiff adequately alleges the fourth element: other similarly situated employees outside of the protected class were treated more favorably giving rise to an inference of discrimination.  *See Achal*, 114 F. Supp. 3d at 800.  Plaintiff identifies two other employees who shared the same job title as Plaintiff but were not African American.  (ECF No. 13 at 3.)  Plaintiff alleges these employees were treated differently with regards to discipline and evaluations.  (*Id.* at 12.)  Plaintiff alleges she is aware of other similarly situated employees who

1    were not African American who had job performance issues but were not impacted in their

2    performance evaluations.  (*Id.* at 10.)  Plaintiff further alleges she is aware of other non-African

3    American employees that raised concerns about Defendant's improper procedures for employee

4    discipline, but who were not threatened with discipline or termination.  (*Id.*)  Finally, Plaintiff

5    alleges she was replaced in her position with an employee who was not African American.  (*Id.* at

6    7.)  Although Plaintiff's allegations regarding similarly situated employees constitute

7    circumstantial evidence, the Court can infer at least a plausible discriminatory motive behind

8    Plaintiff's termination.

9         At this early stage of litigation and giving the Plaintiff the benefit of every reasonable

10   inference, the Court finds Plaintiff sufficiently alleges facts to state a claim for racial

11   discrimination.  Accordingly, Defendant's motion to dismiss Plaintiff's claim for racial

12   discrimination in violation of California Government Code § 12940(a) is DENIED.

13                C.    Claim Three: Wrongful Termination in Violation of Public Policy

14        Defendant argues Plaintiff's claim for wrongful termination in violation of public policy

15   fails because it is derivative of her insufficiently pleaded discrimination claims.  (ECF No. 14 at

16   12) (citing *Sanders v. Arneson Prods., Inc.*, 91 F.3d 1351, 1354 (9th Cir. 1996), *cert. denied*, 520

17   U.S. 1116 (1997); *Muller v. Auto. Club of S. Cal.,* 61 Cal. App. 4th 431, 450–52 (1998)).  In

18   opposition, Plaintiff argues that her discrimination claims were sufficiently plead and therefore

19   the claim for wrongful termination in violation of public policy must also survive.  (ECF No. 15

20   at 7.)

21        "The elements of a claim for wrongful discharge in violation of public policy are[:] (1) an

22   employer-employee relationship[;] (2) the employer terminated the plaintiff's employment[;] (3)

23   the termination was substantially motivated by a violation of public policy[;] and (4) the

24   discharge caused the plaintiff harm."  *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144,

25   154 (2014).  With respect to the first and second elements, Plaintiff alleges she was employed by

26   Defendant from 2002 until she was terminated on December 5, 2015.  (ECF No. 13 at 1, 7.)

27   ///

28   ///

10

With respect to the third element, the public policy implicated must be: "(1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of discharge; and (4) substantial and fundamental." *Freund v. Nycomed Amersham*, 347 F.3d 752, 758 (9th Cir. 2003) (quoting *City of Moorpark v. Superior Ct.*, 18 Cal. 4th 1143, 1159 (1998)). The public policy implicated in Plaintiff's claim is articulated in California Government Code § 12920, which declares it is "the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of . . . race . . . physical disability . . . [or] medical condition . . . ." Cal. Gov't Code § 12920. The public policy against racial and disability discrimination as reflected in FEHA is sufficient to form the basis of a common law wrongful termination claim. *City of Moorpark*, 18 Cal. 4th at 1161; *Kap-Cheong v. Korea Express, USA, Inc.*, No. C 02-4041 CRB, 2003 WL 946103, at *5 (N.D. Cal. Feb. 12, 2003) ("Violations of FEHA and/or the California Constitution based on race/national origin discrimination are issues of fundamental state public policy and fall under this category."). Similarly, FEHA's policy prohibiting disability discrimination in employment is sufficiently substantial and fundamental to support a claim for wrongful termination in violation of public policy. *City of Moorpark*, 18 Cal. 4th at 1159–1161. Accordingly, the third element is met.

Finally, with respect to the fourth element, it is undisputed that Plaintiff suffered damages from her termination.

Based on the foregoing, Plaintiff sufficiently alleges facts to state a claim for wrongful termination in violation of public policy. Accordingly, Defendant's motion to dismiss Plaintiff's claim for wrongful termination in violation of public policy is DENIED.

### D.   Claim Four: Retaliation in Violation of Cal. Gov't Code § 12940(h)

Defendant argues Plaintiff fails to allege sufficient facts to show Plaintiff was engaged in a protected activity. (ECF No. 14 at 12–13.) Defendant further argues that even if Plaintiff had sufficiently pleaded facts to show Plaintiff was engaged in a protected activity, she fails to make a showing that there is a causal link between such allegations and her termination. (*Id.* at 13.) In

1  opposition, Plaintiff argues the factual allegations of the FAC state the required elements of a

2  retaliation claim and create an inference that Defendant knowingly took adverse employment

3  action against Plaintiff based on protected activity.  (ECF No. 15 at 8.)

4      FEHA makes it unlawful for an employer "to discharge, expel, or otherwise discriminate

5  against any person because the person has opposed any practices forbidden under this part or

6  because the person has filed a complaint, testified, or assisted in any proceeding under this part."

7  Cal. Gov't Code § 12940(h).  To establish a claim for retaliation in violation of § 12940(h), a

8  plaintiff must show "(1) he or she engaged in a 'protected activity,' (2) the employer subjected

9  the employee to an adverse employment action, and (3) a causal link existed between the

10 protected activity and the employer's action." *Yanowitz*, 36 Cal. 4th at 1042 (2005); *Ayala*, 263

11 F. Supp. 3d at 911.  "'[P]rotected activity' for purposes of [a FEHA retaliation claim] involves

12 some level of opposition to the employer's actions based on the employee's reasonable belief that

13 some act or practice of the employer is unlawful." *Kelley v. Corr. Corp. of Am.*, 750 F. Supp. 2d

14 1132, 1144 (E.D. Cal. 2010).

15     Here, with respect to the first element, Plaintiff's allegations of filing of an EEO claim

16 upon her return to work and her repeated attempts to speak to management regarding a hostile

17 work environment constitute "protected activity" for purposes of a retaliation claim under FEHA.

18 (ECF No. 13 at 6–7); *see also Passantino v. Johnson & Johnson Consumer Prod., Inc.*, 212 F.3d

19 493, 506–507 (9th Cir. 2000) (finding an employee's informal complaints to a supervisor

20 regarding unlawful discrimination is a "protected activity" and actions taken against the employee

21 after such complaints may constitute retaliation).  With respect to the second element, as

22 established above, Plaintiff suffered an adverse employment action when she was terminated as

23 she faced a hostile work environment which failed to accommodate her disability.  (ECF No. 13

24 at 6); *see Brooks*, 229 F.3d at 928–29.

25     With respect to the third element, the Court finds Plaintiff sufficiently alleges a causal link

26 between the protected activity and the adverse employment action.  The Ninth Circuit has held

27 that "when adverse employment decisions are taken within a reasonable period after complaints

28 of discrimination have been made, retaliatory intent may be inferred." *Passantino*, 212 F.3d at

507 (citing *Yartzoff v. Thomas*, 809 F.2d 1371, 1375–76 (9th Cir. 1987) (finding causation based on timing of retaliation); *Miller v. Fairchild Industries, Inc.*, 885 F.2d 498, 505 (9th Cir. 1989) (holding that discharges 42 and 59 days after EEOC hearings were sufficient to establish prima facie case of causation); *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997)).  Here, Plaintiff alleges she attended a meeting where she reported that Defendant was using improper procedures in employee discipline.  (ECF No. 13 at 6.)  She alleges that it was two weeks later when she was terminated from her position.  (*Id.* at 7.)  The Court can infer a causal link between the protected activity and the adverse employment action based on the timing of the relevant actions.

Based on the foregoing, Plaintiff sufficiently alleges facts to state a claim for retaliation.  Accordingly, Defendant's motion to dismiss Plaintiff's claim for retaliation is DENIED.

### E.    Claim Five: Harassment

Defendant argues Plaintiff alleges only a few isolated incidents in support of her claim for harassment, which are insufficient to show a hostile work environment.  (ECF No. 14 at 14.)  Defendant further argues Plaintiff fails to establish that Plaintiff was subject to harassment *because* she is a member of a protected group.  (*Id.*)  In opposition, Plaintiff argues she was "faced with untrue accusations about her job performance" based on her protected characteristics.  (ECF No. 15 at 9.)

FEHA prohibits harassment based on a variety of protected categories such as race, religious creed, color, national origin, ancestry, and physical or mental disability.  Cal. Gov't Code §§ 12940(j)(1), (3).  To state a claim for harassment, Plaintiff must show: (1) she is a member of a protected group; (2) she was subjected to harassment because she is a member of that protected group; and (3) the harassment was so severe or pervasive that it created a hostile work environment.  *Whitten v. Frontier Commc'ns Corp.*, No. 2:12-cv-02926-TLN-EFB, 2015 WL 269435, at *14 (E.D. Cal. Jan. 21, 2015) (citing *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013); *Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal. 4th 121 (1999)).  "Harassment cannot be occasional, isolated, sporadic, or trivial . . . rather the plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature."  *McKenna v. Permanente Med. Grp., Inc.*, 894 F. Supp. 2d 1258, 1281 (E.D. Cal. 2012).  Factors constituting

1    harassment may include: "the frequency of the discriminatory conduct; its severity; whether it is

2    physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

3    interferes with an employee's work performance." *Miller v. Dep't of Corrections*, 36 Cal. 4th

4    446, 462 (2005).

5         With respect to the first element, as already discussed, Plaintiff sufficiently alleges she is

6    part of a protected group.  With respect to the second element, giving Plaintiff the benefit of every

7    reasonable inference, the Court can infer that Plaintiff was subjected to harassment because she is

8    part of a protected group.  Specifically, Plaintiff alleges Defendant continually denied her return

9    to work, even when given a physician's note that she could conduct her job duties with the

10   accommodation of an electric scooter.  (ECF No. 13 at 4.)  Plaintiff further alleges Defendant's

11   management personnel told Plaintiff that her medical benefits would terminate if she did not

12   return to work, knowing that Plaintiff was on medical leave and was actively attempting to return

13   to work with accommodations.  (*Id.* at 5.)  Defendant allegedly requested additional duplicative

14   documentation from Plaintiff's physician and otherwise obstructed Plaintiff from returning to

15   work.  (*Id.*)  The Court can reasonably infer that Defendant's continuing hostility and "several

16   occasions" of screaming were related to Plaintiff's membership in a protected group.  (*Id.* at 14);

17   *see also Roby v. McKesson Corp.*, 47 Cal. 4th 686, 711 (2009), *as modified* (Feb. 10, 2010)

18   (holding that evidence of discrimination could support an inference of harassment in violation of

19   FEHA).

20        With respect to the third element, Plaintiff's allegations of receiving negative reviews and

21   termination refer to common personnel activities that do not generally give rise to a harassment

22   claim.  *See Roby*, 47 Cal. 4th at 706 ("[T]he exercise of personnel management authority properly

23   delegated by an employer to a supervisory employee might result in discrimination, but not in

24   harassment." (emphasis in original)).  The *Roby* court explained, "harassment focuses on

25   situations in which the social environment of the workplace becomes intolerable because the

26   harassment (whether verbal, physical, or visual) communicates an offensive message to the

27   harassed employee."  *Id.* (emphasis in original).  Disregarding facts relating to common personnel

28   activities, Plaintiff's allegations in support of harassment consist of Defendant making "false

statements" regarding her performance, screaming at Plaintiff on "several occasions," and giving "inaccurate information" about her return to work.  (ECF No. 13 at 14.)  Plaintiff alleges the "harassment escalated to the point that Defendant[] created a hostile work environment that impacted Plaintiff's stress and led to . . . termination of Plaintiff's employment."  (*Id.*)  Plaintiff also alleges she believes "the discipline issues she faced, the issues with her return to work with reasonable accommodation, and her termination were in retaliation for her reporting of illegal and improper actions and based on her race, medical condition, and support of other employees who were unfairly targeted for discrimination and harassment by [Defendant's] management." (*Id.* at 7.)  Plaintiff sufficiently alleges the harassing behavior was not "occasional, isolated, sporadic, or trivial" but instead was part of a generalized pattern of harassment related to her membership in a protected group.  *McKenna*, 894 F. Supp. 2d at 1281.

Based on the foregoing, Plaintiff sufficiently alleges facts to state a claim for harassment. Accordingly, Defendant's motion to dismiss Plaintiff's harassment claim is DENIED.

F.     Claim Six: Failure to Prevent Discrimination in Violation of Cal. Gov't Code § 12940(k)

FEHA forbids an employer from failing "to take all reasonable steps necessary to prevent discrimination and harassment . . . from occurring."  Cal. Gov't Code § 12940(k).  To state a claim for failure to prevent discrimination, a plaintiff must show: (1) she was subjected to discrimination; (2) defendant failed to take all reasonable steps to prevent the discrimination; and (3) this failure caused plaintiff to suffer injury, damage, loss or harm.  *Achal*, 114 F. Supp. 3d at 804 (citing *Leland v. City & Cnty. of S. F.*, 576 F. Supp. 2d 1079, 1103 (N.D. Cal. 2008)). Section 12940(k) applies to "an employer who knew or should have known of discrimination or harassment" and "fail[s] to take prompt remedial action."  *Vierria v. Cal. Highway Patrol*, 644 F. Supp. 2d 1219, 1245 (E.D. Cal. 2009).

Defendant argues the FAC does not state a claim for failure to prevent discrimination because Plaintiff has not alleged facts sufficient to state a discrimination claim.  (ECF No. 14 at 14.)  In opposition, Plaintiff asserts she has adequately pleaded claims for discrimination, harassment, and retaliation based on race and disability and that Defendant was aware of the

1    discriminatory actions and took no reasonable steps to investigate or prevent these actions.  (ECF

2    No. 15 at 9–10.)

3         With respect to the first element, the Court has already found the FAC adequately alleges

4    all the elements of disability discrimination and racial discrimination.  With respect to the second

5    element, Plaintiff specifically alleges Defendant owed Plaintiff the duties to refrain from

6    discriminating against her, to adequately supervise employees to prevent discriminatory acts

7    against her, and to engage in a prompt meaningful investigation of her work performance prior to

8    terminating her.  (ECF No. 13 at 16.)  Plaintiff also alleges she believes no investigation was

9    conducted into her complaints regarding the failure to provide her with accommodations or her

10   complaints that she was facing false disciplinary charges and ultimately termination.  (*Id.* at 7.)

11   These are sufficient allegations to establish that Defendant was "an employer who knew or should

12   have known of discrimination" yet "fail[ed] to take prompt remedial action."  *Vierra*, 644 F.

13   Supp. 2d at 1245.  With respect to the third element, Plaintiff alleges "[a]s a direct and proximate

14   result of Defendant['s] acts of discrimination and retaliation, [she] has suffered and continues to

15   suffer substantial economic losses, in earnings and other benefits she would have received."

16   (ECF No. 13 at 16.)

17        Based on the foregoing, Plaintiff sufficiently alleges facts to state a claim for failure to

18   prevent discrimination.  Accordingly, Defendant's motion to dismiss Plaintiff's claim for failure

19   to prevent discrimination is DENIED.

20              G.    Claim Seven: Failure to Accommodate in Violation of Cal. Gov't Code §

21                    12940(m)

22        FEHA makes it an unlawful employment practice "[f]or an employer . . . to fail to make

23   reasonable accommodation for the known physical or mental disability of an applicant or

24   employee."  Cal. Gov't Code § 12940(m).  To state a claim for failure to accommodate, Plaintiff

25   must show: (1) she suffered from a disability covered by FEHA; (2) she was a qualified

26   individual; and (3) the defendant failed to reasonably accommodate her disability.  *Mohsin v. Cal.*

27   *Dep't of Water Res.*, No. 2:13-cv-01236-TLN-EFB, 2016 WL 4126721, at *4 (E.D. Cal. Aug. 3,

28   2016); *see also Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 256 (2000).

Defendant argues Plaintiff's failure to accommodate claim must fail because Plaintiff admits Defendant did accommodate her medical condition.  (ECF No. 14 at 15.)  Defendant argues Plaintiff's real complaint is that she did not return to work as quickly as she would have liked, but this is not sufficient to state a claim for failure to accommodate.  (*Id.*)  In opposition, Plaintiff asserts Defendant made threats against Plaintiff's employment, telling her that accommodation was not allowed, delayed her return to work, and forced the extension of her leave unnecessarily.  (ECF No. 15 at 10.)  Plaintiff contends repeated denials of her request for accommodation and a failure to respond in a reasonable time is sufficient to allege a failure to accommodate.  (*Id.*)  Defendant does not dispute that Plaintiff is a qualified individual, and the Court has found that Plaintiff suffers from a disability under FEHA.  With respect to whether Defendant failed to reasonably accommodate Plaintiff's disability, Plaintiff alleges nearly three months passed between Plaintiff providing a note from her physician that stated she could perform the duties of her job with the use of a motorized scooter, and Defendant approval of her return to work. [2]  (ECF No. 13 at 4–6.)  "[A]n employer's unreasonable delay in providing reasonable accommodation to a disabled employee may constitute a failure to provide such accommodation.  The acceptable timetable for an employer's proving a requested accommodation varies depending on the nature of the request and the circumstances of each case."  *Budwig v. Allegiant Air, LLC*, No. 1:18-cv-01068-EPG, 2020 WL 5235671, at *12 (E.D. Cal. Sept. 2, 2020).  At this early stage in the litigation and giving Plaintiff the benefit of every reasonable inference, the Court finds Plaintiff sufficiently alleges facts to establish Defendant failed to reasonably accommodate her disability.

Based on the foregoing, Plaintiff sufficiently alleges facts to state a claim of failure to provide reasonable accommodations.  Accordingly, Defendant's motion to dismiss Plaintiff's claim for failure to provide reasonable accommodations is DENIED.

---

[2]     Plaintiff alleges she went on a medical leave of absence on March 28, 2015, and was approved to return to work on June 22, 2015, with accommodations for use of a scooter.  (ECF No. 13 at 4.)

1     H.  Claim Eight: Failure to Engage in the Interactive Process in Violation of

2        Cal. Gov't Code § 12940(n)

3    FEHA makes it unlawful "[f]or an employer or other entity covered by this part to fail to

4 engage in a timely, good faith, interactive process with the employee or applicant to determine

5 effective reasonable accommodations, if any, in response to a request for reasonable

6 accommodation by an employee or applicant with a known physical or mental disability or

7 known medical condition."  Cal. Gov't Code § 12940(n).  So long as the employee is disabled

8 and qualified to perform his job duties, the employer has an affirmative duty "to explore further

9 methods of accommodation before terminating [the employee]."  *Humphrey v. Mem'l Hosps.*

10 *Ass'n*, 239 F.3d 1128, 1133 n.6, 1137 (9th Cir. 2001).  However, "an employer may be held liable

11 for failing to engage in the good faith interactive process only if a reasonable accommodation was

12 available."  *Nadaf-Rahrov v. Neiman Marcus Group, Inc.*, 166 Cal. App. 4th 952, 979–80 (2008).

13 The good faith interactive process requires that "both sides must communicate directly, exchange

14 essential information and neither side can delay or obstruct the process."  *Id.* at 984–85

15 (alterations omitted).  "[T]he trial court's ultimate obligation is to isolate the cause of the

16 breakdown [in the interactive process] and then assign responsibility," so the employer may be

17 liable only if the employer is responsible for the breakdown of the interactive process.  *Id.* at 985

18 (alterations omitted).

19    Defendant argues Plaintiff's claim must fail because the FAC admits Defendant engaged

20 in the interactive process and ultimately provided Plaintiff with the requested accommodation.

21 (ECF No. 14 at 15–16.)  In opposition, Plaintiff asserts she alleged sufficient facts to establish

22 Defendant had unreasonably delayed and otherwise failed to sufficiently engage in the interactive

23 process.  (ECF No. 15 at 11.)

24    The Court finds Plaintiff has alleged sufficient factual support to demonstrate her need for

25 accommodations.  Specifically, Plaintiff alleges she provided Defendant with requested physician

26 notes, the requisite paperwork, and continually checked in with Defendant's staff, Penny Steiner

27 and Kelly McGillis.  (ECF No. 13 at 3–5.)  Plaintiff alleges that, nevertheless, Defendant denied

28 her requests for accommodation.  (*Id.*)  In interpreting the facts in the light most favorable to

1   Plaintiff, the Court can draw a reasonable inference that Defendant refused to sufficiently engage

2   in the interactive process by unreasonably delaying and creating unnecessary obstacles for

3   Plaintiff's return to work with reasonable accommodations.  *See Nadaf-Rahrov*, 166 Cal. App. 4th

4   at 984–85.

5        Based on the foregoing, the Court finds Plaintiff has adequately asserted her claim of

6   violation of § 12940(n).  Accordingly, Defendant's motion to dismiss Plaintiff's claim of failure

7   to engage in the interactive process under FEHA is DENIED.

8                    I.      Claim Nine: IIED

9        To state a claim for IIED, a plaintiff must show, among other things, "extreme and

10  outrageous conduct by the defendant with the intention of causing, or reckless disregard of the

11  probability of causing, emotional distress."  *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009).

12  Extreme and outrageous conduct must "exceed all bounds of that usually tolerated in a civilized

13  community."  *Id.* at 1050–51.  "Whether a defendant's conduct can reasonably be found to be

14  [extreme and] outrageous is a question of law that must initially be determined by the court."

15  *Berkley v. Dowds*, 152 Cal. App. 4th 518, 534 (2007).  "A simple pleading of personnel

16  management activity is insufficient to support a claim of intentional infliction of emotional

17  distress, even if improper motivation is alleged."  *Janken v. GM Hughes Electrs.*, 46 Cal. App.

18  4th 55, 80 (1996).  Personnel management activity includes, "hiring and firing, job or project

19  assignments, office or workstation assignment, promotion or demotion, performance evaluations,

20  the provision of support, the assignment or non-assignment of supervisory functions, deciding

21  who will and who will not attend meetings, deciding who will be laid off."  *Id.* at 64–65.

22       Defendant argues Plaintiff bases her claim solely on her termination, a personnel decision

23  that is not the type of "extreme and outrageous" conduct sufficient for an IIED claim.  (ECF No.

24  14 at 16.)  In opposition, Plaintiff argues that she sufficiently alleges Defendant discriminated

25  against Plaintiff, failed to investigate evidence of discrimination against Plaintiff, failed to

26  investigate reports she and other employees made of improper behavior, and acted with the intent

27  of causing harm to employees.  (ECF No. 15 at 12.)  Plaintiff contends these alleged facts are

28  sufficient to constitute the outrageous and extreme behavior required to state a claim for IIED.

1    (*Id.*)  The Court disagrees.  Plaintiff's allegations arise out of her termination — an activity

2    California courts have expressly found constitutes personnel management activity.  *Janken,* 46

3    Cal. App. 4th at 64–65.  The remaining actions, such as discrimination, failure to investigate

4    reports of discrimination, and acting with the intent to harm employees, are not in themselves

5    sufficient to constitute extreme and outrageous conduct that "exceeds all bounds of that usually

6    tolerated in a civilized community."  *Hughes*, 46 Cal. 4th at 1050–51.

7          Plaintiff also alleges Defendant's management screamed at Plaintiff on "several

8    occasions" in 2015.  (ECF No. 13 at 14.)  However, the allegations do not provide sufficient

9    detail to establish that Defendant was acting with the intention, or with reckless disregard of the

10   probability, of causing emotional distress.  Plaintiff's allegations are insufficient to establish the

11   screaming caused her "emotional distress of such substantial quantity or enduring quality that no

12   reasonable man in a civilized society should be expected to endure it."  *Fletcher v. Western Nat'l*

13   *Life Ins. Co.*, 10 Cal. App. 3d 376, 397 (1970).  "Ordinarily mere insulting language, without

14   more, does not constitute outrageous conduct."  *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.

15   3d 148, 155 n.7 (1987); *see also Schneider v. TRW, Inc.*, 938 F.2d 986, 992–93 (9th Cir. 1991)

16   (holding that there is no basis for an IIED claim where plaintiff's evidence showed her supervisor

17   screamed, yelled, and made threatening gestures while criticizing her job performance); *Alcorn v.*

18   *Anbro Eng'g, Inc.*, 2 Cal. 3d 493, 497–98 (1970) (holding that an IIED claim can stem from a

19   supervisor shouting racial epithets if coupled with aggravating circumstances).  Plaintiff does not

20   provide sufficient detail to determine whether Defendant's screaming was "mere insulting

21   language" or something more.

22         Based on the foregoing, the Court finds Plaintiff fails to sufficiently allege facts to support

23   her claim of IIED.  The Court previously indicated in its April 6, 2020 Order granting

24   Defendant's motion for judgment on the pleadings that Plaintiff must support her IIED claim with

25   factual allegations to suggest that Defendant's conduct was "outrageous beyond the bounds of

26   human decency."  *Janken*, 46 Cal. App. 4th at 80.  Plaintiff still fails to do so in her FAC.

27   ///

28   ///

1    Accordingly, Defendant's motion to dismiss Plaintiff's claim for IIED is GRANTED.

2    Because the defects described above could be cured by amendment, the claim is granted with

3    leave to amend. *Lopez*, 203 F.3d at 1130.

4    **IV.    CONCLUSION**

5    For the reasons set forth above, Defendant's motion to dismiss (ECF No. 14) is hereby

6    GRANTED in part and DENIED in part as follows:

7    1.    Defendant's motion to dismiss Plaintiff's claim for disability discrimination is

8    DENIED;

9    2.    Defendant's motion to dismiss Plaintiff's claim for racial discrimination is DENIED;

10   3.    Defendant's motion to dismiss Plaintiff's claim for wrongful termination in violation

11   of public policy is DENIED;

12   4.    Defendant's motion to dismiss Plaintiff's claim for retaliation is DENIED;

13   5.    Defendant's motion to dismiss Plaintiff's claim for harassment is DENIED;

14   6.    Defendant's motion to dismiss Plaintiff's claim for failure to prevent discrimination is

15   DENIED;

16   7.    Defendant's motion to dismiss Plaintiff's claim for failure to accommodate is

17   DENIED;

18   8.    Defendant's motion to dismiss Plaintiff's claim for failure to engage in the interactive

19   process is DENIED; and

20   9.    Defendant's motion to dismiss Plaintiff's claim for IIED is GRANTED with leave to

21   amend.

22   Plaintiff has thirty (30) days from the electronic filing date of this Order to file an amended

23   complaint.  Defendant shall file a responsive pleading within twenty-one (21) days of the

24   electronic filing date of the amended complaint.

25   IT IS SO ORDERED,

26   **DATED: MARCH 2, 2022**

27

28

Troy L. Nunley
United States District Judge

21